UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| THEODORE BARBEE, )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. ) | Case No. 1:08-cv-265<br><br>COLLIER/CARTER |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

    (1)    The plaintiff's Motion for Judgment on the Pleadings (Doc. 13).

    (2)    The defendant's Motion for Summary Judgment (Doc. 17)

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Application for Benefits

Plaintiff filed an application for Supplemental Security Income disability payments ("SSI") on March 29, 2006, alleging disability beginning January 1, 2005 (Tr. 87). Plaintiff alleged he was unable to work since January 2005 due to manic depression, anxiety, nerves, high

blood pressure, high cholesterol, sleep apnea, rapid heart beat, numbness in his hands and feet, acid reflux, rheumatoid arthritis, and because he could "hardly read and write anything more than [his] name." (Tr. 80). His claim was denied initially and upon reconsideration. An administrative hearing was held before Administrative Law Judge James E. Deen, Jr. (the "ALJ") in Chattanooga, Tennessee on March 13, 2008. At the hearing, Plaintiff's former attorney orally amended the alleged onset date to March 29, 2006 to correspond with the filing date of the SSI application. The ALJ issued an unfavorable decision dated May 30, 2008 (Tr. 13-22).

The ALJ found Plaintiff retained the residual functional capacity to perform a reduced but significant range of light and unskilled work, with lifting/carrying 15 pounds and standing/walking four hours and/or sitting six hours during an eight-hour period. He found Plaintiff had an adequate ability to use his upper extremities for pushing/pulling as well as reaching, handling, fingering, and feeling. The ALJ restricted Plaintiff from climbing or crawling, but permitted occasional bending, balancing, stooping, kneeling, and crouching. He found Plaintiff had an adequate ability to see, hear, and speak, as well as an adequate ability to understand, remember and carry out simple job instructions, interact appropriately with supervisors, coworkers and the general public, use judgment, and deal with ordinary changes in a routine work setting. The ALJ found Plaintiff was somewhat limited by pain and other symptoms, but retained an adequate ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances. Plaintiff could perform simple, repetitive tasks in a low stress work environment (Tr. 15). Considering Plaintiff's age, education, past work experience, and residual functional capacity, and relying on the testimony of the vocational expert, the ALJ concluded Plaintiff was not under a disability as defined by the

Act because he remained capable of performing a significant number of jobs existing in the economy (Tr. 20-21).

Plaintiff then appealed to the Appeals Council, which issued a letter dated September 19, 2008 denying Plaintiff's request for review. The decision of the ALJ, therefore, became the final administrative action in this case. This Court has jurisdiction of the action under 42 U.S.C. § 405(g).

<u>Standard of Review - Findings of ALJ</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he cannot return to his former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings,

3

they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision of May 30, 2008, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 29, 2006, the application date and amended alleged onset date (20 CFR 416.920(b) and 416.971 et seq.).

2. The claimant has "severe" impairments, which include a history of sleep apnea, a history of heart palpitations, carpal tunnel syndrome, gastroesophageal reflux disease, hypertension, and depression, but he does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

3. The medical evidence of record as a whole confirms that the claimant has the residual functional capacity to perform a reduced but significant range of light and unskilled work, with lifting/carrying 15 pounds and standing/walking four hours and/or sitting six hours during an eight-hour period. There is adequate ability to use the upper extremities for pushing/pulling as well as reaching, handling, fingering, and feeling. There can be no

4

Case 1:08-cv-00265-CLC-WBC   Document 19   Filed 11/02/09   Page 4 of 18   PageID #: 57

climbing or crawling but occasional bending, balancing, stooping, kneeling, and crouching. There is adequate ability to see, hear, and speak. There is adequate ability to understand, remember and carry out simple job instruction, interact appropriately with supervisors, coworkers and the general public, use judgment, and deal with ordinary changes in a routine work setting. Although somewhat limited by pain and other symptoms, there nevertheless is an adequate ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances. The claimant would require a low-stress work environment performing simple, repetitive tasking.

4. The claimant has no past relevant work (20 CFR 416.965).

5. The claimant was born on June 12, 1956 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

6. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

7. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

9. The claimant has not been under a disability, as defined in the Social Security Act, since March 29, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-21).

## Issue

Plaintiff raises one issue:

> The ALJ failed to adequately address Plaintiff's illiteracy. Plaintiff argues a finding that he was illiterate would direct a finding of "disabled" under Social Security's Medical-Vocational Guidelines (the "grid regulations").

5

Relevant Facts

Personal and Vocational Information

Plaintiff was born in June 1956. He was forty-eight years old at his onset of disability as initially alleged and was defined as a "younger individual" under the Regulations (Tr. 19). *See* 20 C.F.R. § 416.963(c)). At the Administrative Hearing his attorney amended the onset date to March 29, 2006, to correspond with the filing date of the SSI application (Tr. 13). He last worked in June 1993 (Tr. 80). He had a marginal education and no past relevant work experience (Tr. 28-29)

Plaintiff's Disability report notes he attended Ooltewah Elementary School in special education class from 1965 to 1968. The report contains a remark, "I can barely read and I can write my name, anything more than this and people have to spell it out for me to write it out." (Tr. 85). The interviewer who completed the report, G. Watkins, did not assess any problem with reading, although he did note a problem with understanding (Tr. 88). The record also contains a Vocational Analysis Worksheet by examiner Erica Colebank, dated July 20, 2006, which notes Plaintiff is a person Approaching Advanced Age (50 to 54) with a Marginal Education (Tr 102-104). In a Function Report prepared on behalf of Plaintiff by a cousin, Nancy Buchtel, there is a response to a question, "How well do you follow written instructions? (For example, a recipe)". The answer to this question was, "Not very good due to can't remember." In a follow-up question, "How well do you follow spoken instructions?" The response was "Fair, if you tell me in words I understand" (Tr. 92, 99, 101).

Relevant Medical Evidence

On June 9, 2006, psychologist Art Stair performed a consultative examination of Plaintiff

6

(Tr. 162-169). Plaintiff reported that he completed the fourth grade before dropping out of school (Tr. 163). Dr. Stair notes Plaintiff's thinking pattern appeared slightly concrete though not as bad as he appeared to present. Plaintiff had no difficulty maintaining a logical and coherent train of thought. Dr. Stair estimated Plaintiff's cognitive abilities were in the upper borderline intellectual functioning range or possibly in the low average range. Dr. Stair noted "some degree of intentional under performance is suspected." (Tr. 164). He found Plaintiff's test scores did not represent his overall intellectual abilities; his achievement scores in reading, spelling, and arithmetic were all very low and most likely demonstrative of his poor education level. Dr. Stair concluded that although Plaintiff's levels of achievement may have been very low, Plaintiff's true intellectual abilities were much higher than the scores obtained. Dr. Stair opined Plaintiff's Full Scale IQ score should be in the range of 78-82, which was based on his overall presentation, vocabulary, and general demeanor (Tr. 165). Because Plaintiff's reading level was very low, Dr. Stair thought that certain psychological tests would be unproductive. However, he opined "memory malingering tests may indirectly uncover symptom exaggeration or intentional under performance on tests in general." Dr. Stair recommended the memory measuring tests of the REY 15 Item and TOMM (Tr. 165). Even though Dr. Stair thought Plaintiff's true intellectual abilities were higher than the scores achieved, he opined the test scores placed Plaintiff's ability to read at the first grade level and his arithmetic at the first grade level (Tr. 167, 168).

Plaintiff's Testimony

In the March 13, 2008 Administrative Hearing Plaintiff was asked if he was able to read and write. He responded, "I can just write my name." He also was asked if he were given written instructions in simple, straightforward language, could he read or understand that. His

7

response was, "I can't read nothing at all. No, I can't read at all." (Tr. 28). His last job was motel work, cleaning rooms and that was 13 years prior to the Administrative Hearing (Tr. 29).

<u>Vocational Expert Testimony</u>

Rodney Caldwell testified as a vocational expert ("VE") at the administrative hearing after listening to Plaintiff's testimony and reviewing the record (Tr. 37-43). The ALJ asked him hypothetical questions concerning whether there were any jobs in the national or regional economy that could be performed by an individual of Plaintiff's age, education, and work experience (Tr. 37-40). The ALJ asked the VE to assume a hypothetical individual in two age categories: 48 to 49, and 50 to 51 years of age (Tr. 37). The ALJ then described such an individual with less than a high school education, and no past relevant work experience (Tr. 37-38). The ALJ asked the VE to further assume that the individual was able to lift 15 pounds occasionally, ten pounds frequently; could stand and walk for four to six hours and/or sit for six to eight hours during an eight-hour period (Tr. 38). The ALJ also described an adequate ability to use the upper extremities for pushing and pulling as well as reaching, handling, fingering, and feeling; he restricted the hypothetical individual from climbing and crawling. He was permitted only occasional bending, balancing, stooping, kneeling, and crouching, and there could be no work with or near dangerous machinery or equipment. The ALJ added a restriction against commercial driving. He provided that the individual had adequate vision and an adequate ability to hear and speak; the individual would require a low stress placement that allowed simple, repetitive tasking with minimal acceptable interactions with supervisors, coworkers, and the general public. The ALJ explained that the individual's interactions would be consistent with full-time competitive work. He asked the VE to assume an adequate ability to use judgment and

to deal with ordinary changes in a routine, unskilled work setting. He explained that the hypothetical individual's abilities might be somewhat limited by chronic pain, but there would nevertheless be an adequate ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (Tr. 38).

Given these conditions and limitations, the VE testified that there were jobs at the light, unskilled level that such an individual could perform on a full-time basis. He identified examples of 1,500 assembly jobs within the region of Chattanooga, and 150,000 such jobs nationally. He also described 1,200 hand packaging jobs in the region, and 120,000 such jobs nationally. The VE testified that these jobs were representative of the number of available jobs. He also reported that increasing the age of the individual to 51 years-old would not significantly impact the number of jobs. (Tr. 39).

On cross-examination, Plaintiff's counsel asked the vocational expert to alter the hypothetical question by lowering the level of education to a level which " showed the ability to read and do arithmetic at a first grade or less level" (Tr. 42). The VE responded that such an individual would be able to perform the jobs cited. Counsel asked whether the representative jobs required "absolutely no reading, if you're illiterate?" The VE explained that, apart from "recognition of letters, I mean being able to compare one with the other, [one] doesn't really have to read." (Tr. 43). Counsel had no further questions.

Analysis

Plaintiff argues the ALJ erred by failing to find Plaintiff is illiterate. Plaintiff notes this finding would direct a conclusion that Plaintiff meets the medical requirements for disability because under Social Security's regulations, had the ALJ found that Plaintiff was illiterate, Rule

9

202.09 of the grid regulations directs a finding of disability (The onset of disability would be as of the date Plaintiff turns 50, three months after the alleged onset date). *see* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.09.

Plaintiff "does not dispute the physical RFC findings of the ALJ, but rather contends that he is illiterate, and a finding of 'disabled' is warranted under Social Security's regulations." Plaintiff's Brief (Pl. Br.) at 2.

Section 205(g) of the Social Security Act limits the scope of judicial review of the Commissioner's final determination, and provides that the findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). Where the Commissioner's decision is supported by substantial evidence, it should be affirmed, even if the court would have reached the opposite conclusion. *See Walters* at 532.

Significant deference is accorded the Commissioner's decisions, even where a reviewer could reasonably reach an opposite conclusion. Although a plaintiff may have some evidentiary support for his claim, that may be insufficient to warrant reversal. The "Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003).

Plaintiff argues the ALJ erred in finding that his "illiteracy is not confirmed in the record." (Tr. 20), Pl. Br. at 6. The Commissioner, on the other hand, argues the ALJ reasonably

considered the record evidence, including the consultative examiner's psychological report, and found Plaintiff had a marginal education (Tr. 20, 162-169).

The ALJ noted although Plaintiff testified he was illiterate, that limitation was not confirmed in the record (Tr. 20). The ALJ considered and agreed with the conclusions of the consultative examiner, Dr. Stair, who found Plaintiff's depressed reading and arithmetic performance during the psychological examination were not deemed to be valid (Tr. 20, 163-166). Dr. Stair concluded that Plaintiff's test results appeared to underestimate his true abilities. He explained that Plaintiff's "obtained scores are not consistent with his overall presentation. Accordingly, these test scores are not considered to be a valid and reliable assessment of his current functioning." (Tr. 166). Dr. Stair noted "some degree of intentional under performance is suspected." (Tr. 164).

The record evidence supports the ALJ's finding that Plaintiff had a marginal education. As the ALJ noted, Dr. Stair's psychological examination indicated that Plaintiff had driven in the past; following a serious accident nine years earlier, Plaintiff stopped driving because he didn't like it (Tr. 162). The ALJ considered that Plaintiff had the ability to drive. During Dr. Stair's examination, Plaintiff reported that he had attended school through the third or fourth grade. Plaintiff testified that he attended fourth grade (Tr. 28), and reported that he had completed the third grade and attended special education classes (Tr. 84, 85).

In connection with his application for benefits, Plaintiff submitted a Function Report dated April 29, 2006 (Tr. 94-101). When asked about following spoken instructions, Plaintiff reported his ability was "fair" provided one used words he understood. In response to the question "How well do you follow written instructions?" Plaintiff replied "not very good"

11

because he "can't remember." Plaintiff did not suggest he was unable to follow written instructions due to an inability to read, but rather due to his memory (Tr. 99). Within the context of reporting his abilities to follow both types of instructions, those responses did not indicate he was illiterate. Other evidence of record includes the Vocational Analysis Worksheet prepared by examiner Colebank which assessed a marginal education (Tr. 102-104).

The ALJ was not required to accept Plaintiff's allegations that he was totally unable to read or write. Given inconsistencies between Plaintiff's own testimony and his Function Report (Tr. 99), and his "intentional under performance" during mental testing and the test results obtained (Tr. 164, 167,168), I conclude the ALJ was not required to accept his claims of illiteracy.

The ALJ properly applied the regulatory factors in determining Plaintiff had a marginal education. The applicable regulation, found at 20 C.F.R. § 416.964(b), explains how the Agency evaluates education and provides:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally

consider that someone with these educational abilities can do semi-skilled through skilled work.

Plaintiff cites *Skinner v. Secretary of Health and Human Servs.*, 902 F.2d 447 (6th Cir.1990), in support of his argument that a third-grade reading level provides evidence to support a finding of illiteracy (Doc. 14, Pl. Br. at 4-5). Plaintiff compares himself to the successful claimant in *Skinner*, arguing that Dr. Stair's report does not support the ALJ's finding and instead supports that he was functionally illiterate. But, Plaintiff's situation is distinguishable from Skinner. In *Skinner*, the Sixth Circuit noted that the record was "replete with evidence that Mr. Skinner is illiterate." *Skinner*, 902 F.2d at 450. That evidence included not only reading and mathematics scores, but also a diagnosis of illiteracy by an analyst who agreed that valid reading and math scores at the level shown demonstrated illiteracy. *Skinner*, 902 F.2d at 450.

In this case, Plaintiff has not submitted any diagnosis or opinion by a medical professional stating that he is illiterate. Dr. Stair found his test results appeared to be an underestimate of his true abilities and were not considered to be a valid and reliable assessment of current functioning. This was due to his intentional under performance (Tr. 165, 166) Also, as the Commissioner argues, Plaintiff's own treating physician's records contain nothing to suggest Plaintiff was functionally illiterate (Tr. 139-161). Plaintiff suggests that Dr. Stair's recommendation for further testing proves that he believed Plaintiff was illiterate. Dr. Stair did note Plaintiff's achievement scores in reading, spelling, and arithmetic were all very low and most likely demonstrative of his poor education level (Tr. 167). However, Dr. Stair concluded, "it is my opinion that his overall achievement abilities should be higher than these scores demonstrate." (Tr. 167). While Dr. Stair suggested that additional testing could be performed

given Plaintiff's low reading performance, that testing was aimed at measuring memory skills, not reading skills. Dr. Skinner's recommendation does not necessarily mean he felt Plaintiff could not read, but rather it appears to be directed to Plaintiff's malingering in reading performance. Dr. Skinner opined that "memory malingering tests may indirectly uncover symptom exaggeration or intentional under performance on tests in general" (Tr. 165).

The testimony of the VE supports the conclusion that only the slightest ability to read would allow a person to perform the jobs identified (Tr. 43). The VE specifically stated a person could perform the jobs identified if he had the ability to read and do arithmetic at a first grade level (Tr. 42). The only evidence in the record, other than Plaintiff's own testimony, is the assessment of Dr. Stair. Although he thought the reading tests were underestimates of Plaintiffs reading and mathematical abilities, those tests indicated Plaintiff had a first grade level of reading and mathematical skills, sufficient according to the VE's testimony to perform the identified jobs. In light of the above regulatory factors and the record evidence, the ALJ's finding, that Plaintiff had "marginal" educational competence, consistent with his reported level of education, but was not illiterate as defined in 20 C.F.R. § 416.964, is supported by substantial evidence.

*If Plaintiff was illiterate would the Grids control?*

The Commissioner next argues, even accepting Plaintiff's claims of illiteracy, the vocational expert's testimony was undisputed and constituted substantial evidence that even illiteracy would not preclude the performance of a range of unskilled, light work for an individual with Plaintiff's residual functional capacity (Tr. 43, 20). Therefore, continues the argument, even if the Court did not agree with the ALJ's factual determination regarding Plaintiff's reading level, it would be of no practical consequence because, even if Plaintiff was illiterate, the grid rules

14

serve only as a framework and the vocational expert's testimony provides substantial evidence in support of the ALJ's step-five finding and ultimate conclusion that Plaintiff was not entitled to supplemental security income. I disagree with this conclusion.

The question boils down to whether a finding of disabled based on the grids can be trumped or overridden by a contrary opinion of a VE that there are jobs the Plaintiff can perform even though illiterate. For reasons that follow, I conclude the finding of disabled based on the grids is binding on the Commissioner if Plaintiff were found to be illiterate. I note however, that finding does not alter the outcome in this case because I conclude there is substantial evidence to show Plaintiff's ability to read, although limited, is not sufficiently limited to equate to illiteracy.

The Commissioner cites 20 C.F.R. § 416.969a(c)(2)-(d), to support the proposition that if a claimant cannot perform a full exertional range of work, then the grid rules provide a "framework," or are given "consideration," in determining whether the claimant is disabled. However, 416.969a(d) refers to the situation when there are combined exertional and nonexertional limitations as follows:

> ......If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, **we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision**. (emphasis added)

When one looks to Appendix 2, Subpart P of Part 404, Section 200.00(e)(2) there is further guidance on this issue:

> (2) However, where an individual has an impairment or combination of impairments resulting in both strength limitations

15

and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone **and, if not**, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.... (emphasis added)

The Sixth Circuit in *Abbott v. Sullivan*, 905 F. 2d 918, at 926 (6th Cir.1990), discussed the use of the grids as a framework as follows:

The Medical-Vocational Guidelines take account only of a claimant's "exertional" impairment; that is, "an impairment which manifests itself by limitations in meeting the strength requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2 §200.00(e). Where a claimant suffers from an impairment that significantly diminished his capacity to work, but does not manifest itself as a limitation on strength, for example where a claimant suffers from a mental illness, *see, e.g., Cole,* 820 F.2d at 772; manipulative restrictions, *see, e.g., Hurt v. Secretary of Health & Human Services,* 816 F.2d 1141,1143 (6th Cir. 1987); or heightened sensitivity to environmental contaminants, *see, e.g., Shelman v. Heckler,* 821 F.2d 316, 322 (6th Cir. 1987), rote application of the grid is inappropriate. *Cole,* 820 F.2d at 771; *Hurt,* 816, F.2d at 1143; *Kimbrough v. Secretary of Health and Human Services,* 8801 F.2d 794, 796 (6th Cir. 1986). **In the case of an individual who suffers from both exertional and nonexertional impairments, where the grid does not yield a finding of "disabled" when the exertional impairments are considered alone, the grid may be employed only as a "framework" to provide guidance**. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)(2). (emphasis added)

Use of the grids as a framework is applied when, and only when, there is not a finding of disabled when considering exertional findings alone. In this case the ALJ found Plaintiff capable of a reduced but significant range of light and unskilled work (Tr. 15). I conclude this to be an

16

exertional finding by the ALJ. Considering only his exertional limitations, and assuming he could perform a full range of light work, the grids direct disability if plaintiff was illiterate.

This issue was directly addressed in the 9th Circuit in *Cooper v. Sullivan*, 880 F.2d 1152 (9th Cir. 1989). In *Cooper*, based on testimony of a vocational expert, the ALJ concluded, considering her impairments, her age, education and work experience, Mrs. Cooper was not disabled. The VE testified there were several jobs she could perform including crossing guard, self service station operator and cashier, and gate tender. Based on this testimony, Mrs. Cooper was found to be not disabled. The 9th Circuit reversed and the case was remanded. In taking this action, the court addressed the same problem before us in this case:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a) & (e) (1988). In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question, *Id.* at § 200.00(e)(1); other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. *Id.* at § 200.00(e)(2). If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.* In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment."

*Cooper v. Sullivan*, 880 F.2d 1152, at 1155 (9th Cir. 1989)

17

Based on the wording of the Regulations and the logic of *Cooper*, I conclude plaintiff would be disabled if found to be illiterate. However, as set out above, there was substantial evidence in the record to support the conclusion of the ALJ that Plaintiff is not illiterate. Therefore neither reversal or remand is called for in this case.

Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude that there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying Plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1) The Plaintiff's Motion for Judgment on the Pleadings (Doc. 13) be DENIED;

(2) The Defendant's Motion for Summary Judgment (Doc. 17) be GRANTED;

(3) A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to Plaintiff; and,

(4) This action be DISMISSED[1].

Dated: November 2, 2009            s/William B. Mitchell Carter
                                   UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).